**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| RONALD SMITH | : | No. 04-229 |

**MEMORANDUM RE:  PETITION FOR HABEAS CORPUS RELIEF**

**Baylson, J.**                                                                                    **June 5, 2009**

Defendant and Petitioner Ronald Smith was convicted by a jury of carjacking and related

offenses on June 7, 2005.  After the Third Circuit affirmed his conviction and sentence on

appeal, Smith filed the current Motion to Vacate/Set Aside/Correct Sentence Under 28 U.S.C. §

2255, asserting several grounds of error.  For the following reasons, Smith's Motion will be

denied.

**I.        Background and Procedural History**

Smith's conviction arose out of an incident that occurred on January 17, 2004.  The

Government presented evidence that, on January 17, 2004, Tyrone Lewis was sitting in his car

and talking on his cell phone while his car door was partially open.  Ronald Smith approached

the car, pointed a gun to Lewis's head, instructed him to start up the car, and demanded that

Lewis get out.  Lewis followed the instructions, while Smith drove the car away with Lewis's

wallet.  A few minutes later, the Philadelphia Police observed Lewis's car a short distance from

where the carjacking occurred.  After Smith stopped the car and fled, Officer Butler chased

Smith on foot.  Smith was apprehended by Officer Butler just after he discarded both a loaded

gun and Tyrone Lewis's wallet.

State criminal charges were initially filed against Smith, but they were ultimately

dismissed after the U.S. Attorney's Office decided to prosecute him in federal court.  A federal

grand jury indicted Smith on April 21, 2004.  (Doc. 1).  A superseding indictment was later

entered on September 8, 2004 charging Smith on three counts:  (1) carjacking, in violation of 18

U.S.C. § 2119; (2) carrying a firearm during and in relation to a crime of violence, in violation of

18 U.S.C. § 924(c); and (3) being a felon in possession of a firearm and ammunition, in violation

of 18 U.S.C. § 922(g)(1).  (Doc. 20).  After a trial by jury from June 6 to June 7, 2005, the jury

returned a verdict of guilty on all counts.  (Doc. 56, 57).  This Court then held a sentencing

hearing for Smith on September 15, 2005 and issued a sentence of 360 months imprisonment,

five years of supervised release, a $1,000 fine, and a $300 special assessment.  (Doc. 70, 71, 76).

Smith appealed his conviction and sentence to the Court of Appeals.  The Third Circuit

rendered its decision on August 2, 2007, affirming both the conviction and sentence.  See United

States v. Smith, 247 Fed. Appx. 321 (3d Cir. 2007).

On December 10, 2008, Smith filed the current Motion to Vacate/Set Aside/Correct

Sentence Under 28 U.S.C. § 2255.  (Doc. 79).  On December 29, 2008, Smith filed a Motion to

Amend his petition, seeking to withdraw his fourth ground of error and replace it with a different

ground not raised in the initial habeas petition.  (Doc. 81).  On January 12, 2009, Smith filed a

Memorandum in support of his Motion to Vacate.  (Doc. 83).  After this Court granted the

Government an extension of time to respond, the Government filed its Response to Smith's §

2255 petition on April 13, 2009.  (Doc. 88).  Smith filed his reply on May 13, 2009.  (Doc. 89).

II.     **Standard for § 2255 Petitions**

Smith brings this Motion under 28 U.S.C. § 2255, which provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  A district court may grant relief under this statute if the court finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."  28 U.S.C. § 2255(b).

## III.    Points of Alleged Error

In his Motion, Smith raises the following points of alleged error:

(1)     Smith's counsel was ineffective for not objecting to the composition of the venire, which Smith contends was not a fair cross section of the community;

(2)     Smith's counsel was ineffective for not filing pre-trial motions in the state criminal proceedings and for not pursuing a plea bargain on the state and federal charges;

(3)     Smith's counsel was ineffective for not objecting to the constitutionality of one of the statutes under which Smith was convicted, 18 U.S.C. § 922(g);

(4)     Smith's counsel was ineffective for not challenging the application of the post-Booker sentencing regime on ex post facto grounds, and for not challenging the imposition of consecutive sentences for the 18 U.S.C. § 922(g) and 18 U.S.C. § 2119 convictions.[1]

---

[1] Smith had originally argued, for the fourth ground of error, that his counsel was ineffective for not challenging enhancements that were applied in calculating his sentence.

All of Smith's challenges rest on the threshold argument that his counsel was ineffective. Whether a defendant was denied effective assistance of counsel is controlled by the Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984). "Under the Strickland standard, in order to prevail on a claim of ineffective assistance of counsel, a petitioner must establish that: (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense." United States v. Zahir, 2008 WL 5050180, at *3 (E.D. Pa. Nov. 26, 2008) (Baylson, J.) (citing Strickland, 466 U.S. at 687).

**A.      Composition of the Venire**

First, Smith argues that his counsel was ineffective by not objecting to what he argues was an unconstitutional composition of the venire or jury panel. In particular, Smith contends that "Petitioner being of African-American descent, was denied the constitutional guarantee of having a jury panel that was a 'fair cross section' of his community. Out of the fifty (50) something potential jurors, only three (3) were of the same descent of [sic] the Petitioner." (Doc. 79 at 6). In support, Smith relies on the World Almanac and Book of Facts 2008, which allegedly states that individuals of African American descent constitute 43.2 percent of Philadelphia's population. (Doc. 83 at 6). The Government responds to this argument by noting that the Eastern District of Pennsylvania is comprised of a greater geographic area than simply the City of Philadelphia and that the Third Circuit already addressed this issue on Smith's direct

---

However, in his Motion to Amend (Doc. 81), Smith acknowledges that this Court did not apply any of the enhancements that he planned to challenge. Instead, Smith seeks to substitute the ground discussed above in place of his prior fourth ground. As the Government's Memorandum in Response addresses Smith's more recent ground of error offered in his Motion to Amend, the Government has suffered no prejudice as a result of Smith's Motion to Amend, and that Motion will be granted.

appeal.

The Government is correct on both points.  Smith argued on direct appeal that the jury

panel was not a fair cross section of the community.  While the Third Circuit did reject Smith's

argument due to his counsel's failure to timely object, the court also considered the merits of the

argument.  The court first noted in its analysis that "[t]he law only assures that the randomly-

selected group of citizens from which jurors are selected represent [sic] a fair cross section of the

community.  It does not provide a right to any particular jury composition or ratio."  Smith, 247

Fed. Appx. at 323 (citing Taylor v. Louisiana, 419 U.S. 522, 538 (1975)).  In order to succeed on

a challenge to the cross section of the jury panel, a defendant must establish:

> (1)  that the group alleged to be excluded is a "distinctive" group in
> the community;
> (2)  that the representation of this group in venires from which
> juries are selected is not fair and reasonable in relation to the
> number of such persons in the community; and
> (3)  that this underrepresentation is due to systematic exclusion of
> the group in the jury-selection process.

Smith, 247 Fed. Appx. at 323 (quoting Duren v. Missouri, 439 U.S. 357, 364 (1979)).

While Smith recognizes that the Third Circuit rejected his argument on appeal due to his

counsel's failure to timely object, he fails to recognize that the court considered the merits of his

argument as well.  The court held that Smith did not provide sufficient statistical evidence to

establish a disparity and did not identify a suspect jury selection practice.  Smith, 247 Fed. Appx.

at 323.  Smith again fails to do so here by not identifying a particular jury selection practice and

by relying on statistical evidence for Philadelphia, which is only a portion of the geographic area

that makes up the Eastern District of Pennsylvania.  In addition, the court noted that the plan

utilized by the Eastern District of Pennsylvania to assemble juries—using voter registration

lists—has been "repeatedly affirmed." Id. at 323 n.2 (citing Ramseur v. Beyer, 983 F.2d 1215, 1233 (3d Cir. 1992); United States v. Mortimer, 1999 WL 504560, at *2 (E.D. Pa. July 14, 1999); United States v. Ortiz, 897 F. Supp. 199, 204 (E.D. Pa. 1995)).

This Court concurs in the Third Circuit's analysis. As this Court finds that Smith "has failed to establish a prima facie case for his challenge to the jury composition," Smith 247 Fed. Appx. at 322, Smith suffered no prejudice when his counsel did not object to the composition. This ground of error is therefore rejected.

### B.      Plea Bargain for State and Federal Proceedings

Next, Smith makes several arguments concerning his counsel's actions in both state and federal proceedings. By way of background, before Smith was charged by federal authorities with the current charges, Smith was first charged by local authorities in Philadelphia with several counts, including carjacking, carrying a firearm without a license, and carrying a firearm on a public street or place, for the same incident at issue in this case. Smith alleges that during a "preliminary examination hearing" in state court, the judge instructed Smith's counsel that he had ten days to file a motion to quash or a motion to challenge transcripts for the state charges. According to Smith, his counsel did not file a motion and did not contact him to discuss Smith's requests for a plea bargain in state court. At some point, the U.S. Attorney's Office decided to charge Smith in federal court, and the Philadelphia District Attorney's Office decided to dismiss the state charges. Smith contends that: "[(1)] counsel was ineffective for not filing any motions on his behalf prior to the announcement of his federal [] Indictment[; (2)] counsel was ineffective for his failure to explore a plea bargain[; and (3) counsel was ineffective] on the federal level at the pre-trial stage, when counsel fail [sic] to explore a plea bargain on behalf of the Petitioner."

(Doc. 83 at 8).

As to Smith's arguments concerning his state court proceedings, Smith argues that, had his state court counsel filed a pre-trial motion or engaged in plea bargaining with the Philadelphia District Attorney's Office—in either case, disposing of the state charges—Smith could have avoided federal prosecution. See (Doc. 83 at 10) ("Had counsel properly investigated a plea offer for the Petitioner [with the District Attorney's Office], the Petitioner would not have had to go to trial federally. There is a more than likely chance the Commonwealth of Pennsylvania would have allowed the Petitioner to plea bargain."). However, Smith fails to establish how his counsel's purported failures were either "deficient" or would have impacted his federal conviction.

A state government's decision to charge an individual for criminal activity generally has no impact on the ability of the federal government to charge the same person for the same conduct. The Supreme Court has long recognized that "the Fifth Amendment d[oes] not apply to a federal prosecution subsequent to a state prosecution of the same person for the same acts." Abbate v. United States, 359 U.S. 187, 189-96 (1959) (holding that federal prosecution was not barred by defendant's guilty plea in state court). "The 'dual sovereignty' doctrine rests on the premise that, where both sovereigns legitimately claim a strong interest in penalizing the same behavior, they have concurrent jurisdiction to vindicate those interests and neither need yield to the other." United States v. Pungitore, 910 F.2d 1084, 1105 (3d Cir. 1990).

As the Government notes, despite the fact that the U.S. Attorney's Office decided to prosecute Smith, the District Attorney's Office could have also pursued the state criminal charges against him. Smith's argument that the U.S. Attorney's Office would not have prosecuted him

-7-

had his counsel quickly disposed of the state charges through pre-trial motions or plea bargaining

amounts to pure speculation.  The U.S. Attorney's Office was not prohibited, as a matter of law,

from pursuing his case, and the Government's submissions in this case suggest that it had a

strong interest in pursuing charges against Smith.  Smith has not provided any case where a court

accepts an argument similar to the one at hand, and this Court can find none.  Smith has not

offered anything but speculation to establish that he was prejudiced in his <u>federal</u> proceedings by

his counsel's actions in state court.

Smith also contends that his counsel was ineffective for failing to pursue a plea bargain.

However, Smith again fails to satisfy the requirements of <u>Strickland</u>.  The decision on whether to

charge a defendant with a crime or to offer a plea bargain is made by the prosecutor, not the

defense counsel.  "Whether to prosecute and what charge to file or bring before a grand jury are

decisions that generally rest in the prosecutor's discretion."  <u>United States v. Batchelder</u>, 442

U.S. 114, 124 (1979) (stating that prosecutor has sole discretion in deciding whether to file

criminal charges and what charges to file); <u>see also</u> <u>United States v. Lovasco</u>, 431 U.S. 783, 790-

96 (1977) (holding that, under the Due Process Clause of the Fifth Amendment, prosecutor has

sole discretion to decide when to file criminal charges).  The prosecutor possesses similar

discretion under the Constitution for plea bargaining.  A defendant has "no constitutional right to

plea bargain; the prosecutor need not do so if he prefers to go to trial.  It is a novel argument that

constitutional rights are infringed by trying the defendant rather than accepting his plea of

guilty."  <u>Weatherford v. Bursey</u>, 429 U.S. 545, 561 (1977) (holding that prosecutor has sole

discretion whether to offer plea bargain).

The Third Circuit's seminal decision on ineffectiveness in the context of plea bargaining

is United States v. Day, 969 F.2d 39, 42-47 (3d Cir. 1992).  In Day, the court considered a § 2255

petitioner's claim of ineffectiveness where the defense counsel allegedly misrepresented to the

petitioner that, if convicted at trial, he would face up to 11 years in prison.  Id. at 42.  The

petitioner therefore rejected the prosecution's offer of a five year plea bargain.  Id.  After being

convicted at trial, the petitioner was ultimately sentenced to 22 years in prison.  Id.  The court

held that, under these facts, the petitioner had made a facially valid claim for ineffectiveness and

remanded the case to the district court for further proceedings.  Id. at 47.

      While Day did recognize that a petitioner can make a claim of ineffectiveness in the

context of plea bargaining, the petitioner's claim in that case was that his counsel offered him

deficient advice concerning whether he should take a deal that was offered.  The issue was not, as

here, whether counsel was ineffective in the absence of any plea bargain offered by the

Government.  Several district court cases from the Third Circuit that have followed the Day

decision, in considering similar ineffectiveness claims, have recognized that the petitioner must

provide some evidence that a plea was offered by the Government, not simply speculation that a

deal would have been offered.

> In the context of claims regarding the assistance of counsel at the
> plea bargaining stage where a defendant eventually proceeded to
> trial, a habeas petitioner must establish three components in order
> to demonstrate prejudice.  He must prove that a plea offer was
> extended by the government, and that a reasonable probability
> exists that he would have accepted the plea offer and the court
> would have approved the agreement.

Enright v. United States, 347 F. Supp. 2d 159, 165 (D.N.J. 2004) (Irenas, S.J.)  (citing Day, 969

F.2d at 44-45).[2]  Cases from courts outside the Third Circuit establish similar requirements.[3]

In addition, Smith's Motion to Vacate and his Memorandum in support do not allege that

defense counsel misrepresented either the consequences of declining a plea bargain and

proceeding to trial, or the consequences in sentencing of accepting an offer.[4]

---

[2] See also Wright v. United States, 2008 WL 4276206, at *2-3 (D. Del. Sep. 17, 2008) (considering § 2255 petitioner's claim that his counsel "were constitutionally ineffective for failing to pursue a plea bargain on his behalf when the evidence against him was 'patently overwhelming,'" the court noted that a petitioner pursuing this type of claim was required to show that the petitioner was "offered an actual plea offer about which counsel provided insufficient advice"); United States v. Odinga, 2007 WL 2461705, at *3-4 (E.D. Pa. Aug. 23, 2007) (Giles, J.) (rejecting § 2255 petitioner's "claim that he did not know his full sentence exposure prior to trial and was denied the ability to enter a guilty plea," where evidence showed that petitioner did know exposure and where Government did not offer plea deal, which precluded satisfaction of prejudice prong); Enright v. United States, 347 F. Supp. 2d 159, 165-66 (D.N.J. 2004) (Irenas, S.J.) (rejecting § 2255 petitioner's claim of ineffectiveness where defense counsel allegedly misrepresented what the Government was required to prove to a jury, which petitioner claims caused him to reject plea overtures from the Government; court held that ineffectiveness claim failed because, inter alia, defendant could not show that Government ever made a formal plea offer); United States v. Di Maio, 1994 WL 25376, at *14-16 (E.D. Pa. Jan. 27, 1994) (Bechtle, J.) (rejecting § 2255 petitioner's claim that "his trial counsel was ineffective for deciding not to plea bargain with the government"; "Petitioner, in the instant case, [does not allege that a plea bargain was offered by the government], and would have the court speculate that the government would have offered a plea agreement, had it been approached, that would have been chosen in lieu of a trial."), aff'd, 37 F.3d 1489 (3d Cir. 1994).

[3] See, e.g., Aguilar v. Alexander, 125 F.3d 815, 820-21 (9th Cir. 1997) (rejecting petitioner's argument that defense counsel was ineffective for not "trying harder" to seek plea bargain after her first attempt was rebuffed and noting that there are "differences in the strategy, tactics, and styles of defense attorneys" for handling plea bargaining);  Brown v. Doe, 2 F.3d 1236, 1246 (2d Cir. 1993) (holding that an attorney's decision not to pursue plea bargaining could be considered reasonable strategy and stating that "it is not necessary that the defendant have counsel who recommends that a plea bargain be pursued"); McClenithan v. Dugger, 767 F. Supp. 257, 259 (M.D. Fla. 1991) (rejecting § 2254 petitioner's claim of ineffectiveness of counsel regarding plea bargaining after noting that the petitioner was required to show "that the prosecutor would have offered a plea agreement, that the petitioner would have accepted the offer, and that the court would have approved it").

[4] See, e.g., Riggs v. Fairman, 399 F.3d 1179 (9th Cir. 2005) (accepting petitioner's argument on § 2254 that counsel was ineffective where counsel, unaware of California's three

> In the cases cited by the petitioner, the prosecutors had actually offered plea agreements. A plea offer actually extended is a wholly different matter from a plea bargain a petitioner simply believes his attorney could or should have obtained for him. In each case, the issue before the habeas court involved the standards to be applied when the petitioner subsequently challenged the wisdom of the plea decision on collateral review.

Wessling v. Kenney, 2007 WL 1289945, at *2 (D. Neb. Mar. 13, 2007).

Smith has not alleged or put forth any evidence to suggest that the Government offered him a plea bargain. The Government's Response similarly indicates that no plea bargain was ever made to Smith prior to his conviction. Smith's claim that his defense counsel was ineffective for not engaging in plea negotiations is therefore insufficient to satisfy the Strickland standard.

### C.     Constitutionality of 18 U.S.C. § 922(g)

Next, Smith argues that his counsel was ineffective for not challenging the constitutionality of one of the statutes with which he was charged—18 U.S.C. § 922(g). In particular, Smith contends that his counsel should have made both a facial and an as applied challenge to the constitutionality of the criminal statute. Smith relies on the Supreme Court's decisions concerning the Interstate Commerce Clause in Jones v. United States, 529 U.S. 848 (2000), United States v. Morrison, 529 U.S. 598 (2000), and United States v. Lopez, 514 U.S.

---

strikes law, unwittingly advised petitioner to reject a plea deal for five years where petitioner ultimately got a 25-to-life sentence), vacated, 430 F.3d 1222; Wanatee v. Ault, 259 F.3d 700 (8th Cir. 2001) (holding that counsel was ineffective where plea was offered but defense counsel failed to inform defendant of the applicable law and where court ultimately imposed higher sentence); Boria v. Keane, 99 F.3d 492 (2d Cir. 1996) (accepting § 2254 petitioner's argument that counsel was ineffective where prosecution made offer of 1-3 years, defense counsel did not provide recommendation on plea even though he believed it would be very difficult to win at trial, petitioner rejected plea, and petitioner was ultimately convicted and sentenced to 20 years to life).

549 (1995).

This argument can be briefly addressed.[5]  After those decisions were rendered by the

Supreme Court, the Third Circuit considered a constitutional challenge to § 922(g) under the

Interstate Commerce Clause in United States v. Singletary, 268 F.3d 196 (3d Cir. 2001).  In

Singletary, the appellant made the same argument that Smith brings here:  "that the

felon-in-possession statute is unconstitutional because the conduct it proscribes—the intrastate

possession of a firearm—does not have a substantial effect upon interstate commerce, and thus

does not constitute a valid exercise of Congress' authority under the Commerce Clause."  268

F.3d at 197.  The Third Circuit squarely rejected this challenge and held that the § 922(g) statute

is constitutional where there is evidence that "the gun had traveled in interstate commerce, at

some time in the past."  Id. at 205; see also United States v. Shambry, 392 F.3d 631, 634 (3d Cir.

2004) ("To the extent that both parties and the District Court agree that we have never addressed

the precise issue of whether proof that the firearm was manufactured in a state other than the

state where the possession occurred is sufficient to establish that the possession was 'in or

affecting commerce' under 18 U.S.C. § 922(g)(1), we conclude, like the overwhelming majority

of our sister courts of appeals, that such proof meets the minimal nexus required to establish that

the firearm affected interstate commerce.").  The Third Circuit has since applied Singletary's

holding on all similar challenges to the felon-in-possession statute.  See, e.g., United States v.

Persinger, 284 Fed. Appx. 885, 889 (3d Cir. 2008).

---

[5] Smith also briefly makes the argument in his Reply Brief that the Government's
interstate commerce powers do not extend beyond those geographic areas that are under the
federal government's exclusive control, e.g., the District of Columbia.  This argument has no
basis in the law and can be dismissed as meritless.

At Smith's trial, the Government presented evidence, by way of testimony from Special Agent Uvena of the Bureau of Alcohol, Tobacco, and Firearms, that the gun used by Smith in commission of the carjacking and discarded immediately prior to his arrest was manufactured outside of the United States, satisfying the interstate commerce element of the felon-in-possession statute. See (Doc. 74 at 185:4-11) (identifying the firearm handled by Smith as being manufactured by Walther and testifying to the following: "Q: Okay. And I think you testified that the Walther firearms are manufactured in Germany? A: That is correct. Q: Sir, does Walther have any U.S. manufacturing locations? A: They currently have a company that does some work on certain firearms which they want Walther parts [sic] as part of the firearm. But as for manufacturing a total firearm, no, they are still manufacturing in Germany.").

In Smith's Reply Brief, he raises for the first time the argument that § 922(g) is unconstitutional due to the Second Amendment. Smith argues that, in light of the Supreme Court's recent decision in District of Columbia v. Heller, 128 S. Ct. 2783 (2008), § 922(g) violates the Second Amendment's guarantee of gun possession.

In Heller, the Supreme Court recognized that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." 128 S. Ct. at 2797. However, the Court went on to note that "the right [is] not unlimited . . . . Thus, we do not read the Second Amendment to protect the right of citizens to carry arms for any sort of confrontation . . . ." Id. at 2799. Relevant to Smith's argument, the Court emphasized that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." Id. at 2816-17.

The Supreme Court's statement makes clear that the Second Amendment does not stand

in the way of the constitutionality of § 922(g).  And, to the extent that <u>Heller</u> left standing prior

precedent on the issue, the Third Circuit has recognized that such challenges are "foreclosed by a

number of cases from [the Third Circuit], the latest of which is <u>United States v. Rybar</u>, 103 F.3d

273 (3d Cir. 1996), which held that 'this court has on several occasions emphasized that the

Second Amendment furnishes no absolute right to firearms.'"  <u>United States v. Bell</u>, 66 Fed.

Appx. 408, 408-09 (3d Cir. 2003).

   Smith therefore suffered no prejudice when his counsel did not challenge the

constitutionality of § 922(g) under either the Interstate Commerce Clause or the Second

Amendment.

   **D.**   **Ex Post Facto Implications of Post-<u>Booker</u> Sentencing and Consecutive**

      **Sentences**

   Finally, as the fourth point of error, Smith argues that his counsel was ineffective for not

challenging this Court's application of the post-<u>Booker</u> sentencing regime on Ex Post Facto

grounds, and for not challenging this Court's imposition of consecutive sentences for the 18

U.S.C. § 922(g) and 18 U.S.C. § 2119 convictions.

     **1.**   **Challenge of Sentence on Ex Post Facto Grounds**

   Smith's first challenge is that his counsel was ineffective for not objecting to this Court's

application of the Sentencing Guidelines under the now-advisory system directed by <u>United</u>

<u>States v. Booker</u>, 543 U.S. 220 (2005).  Smith notes that the Guidelines only became advisory in

2005 after the Supreme Court's decision in <u>Booker</u>.  He argues that, since his crime was

committed prior to 2005, this Court's application of the <u>Booker</u> sentencing regime, rather than

the mandatory system pre-<u>Booker</u>, violated the Ex Post Facto Clause of the United States

Constitution.  Smith contends that his counsel was ineffective for not raising such a challenge during his sentencing.  In his Memorandum, Smith makes the alternative argument that this Court should have sentenced him under the pre-Sentencing Guidelines regime, prior to the enactment of the Sentencing Reform Act of 1984.

The Third Circuit addressed this same Ex Post Facto argument in United States v. Pennavaria, 445 F.3d 720 (3d Cir. 2006).  In Pennavaria, the defendant pleaded guilty to various charges for engaging in a scheme to sub-lease automobiles to members of a cocaine conspiracy without the knowledge of the lessor or the original lessee between January 30, 1998 and July 24, 2001.  Id. at 721.  At sentencing, the district court sentenced the defendant in light of the Supreme Court's decision in Blakely v. Washington, 542 U.S. 296 (2004), the precursor to Booker.  On appeal, the Government successfully argued that the district court erred when it applied the Sentencing Guidelines as a mandatory, rather than an advisory, system, and the Third Circuit remanded the case for resentencing in light of Booker.  Id. at 722-23.  The defendant then argued that "application of the Booker remedy—i.e., resentencing under an advisory Guidelines scheme—is unconstitutional because it would expose him to an ex post facto increase in his maximum sentence from the 46 months he received under the mandatory Guidelines as applied by the District Court, to the [statutory] maximum of [the crime with which he was convicted]." Id. at 723.

The court rejected the defendant's Ex Post Facto argument.  First, it noted that "the Supreme Court in Booker clearly instructed that both of its holdings should be applied to all cases on direct review."  Id. (citing Booker, 543 U.S. at 268).  Second, it held that "Pennavaria had fair warning that participating in a money laundering conspiracy and engaging in substantive

money laundering was punishable by a prison term of up to 20 years under 18 U.S.C. § 1956(a) [and] that his sentence could be enhanced based on judge-found facts as long as the sentence did not exceed the statutory maximum." Id. at 723-24.  Therefore, the Third Circuit held that "application of Booker's remedial holding to cases pending on direct review does not violate the ex post facto principle of the Due Process Clause." Id. at 724; see also United States v. Denmark, 277 Fed. Appx. 142, 143 (3d Cir. 2008) (rejecting petitioner's argument that "the retroactive application of [Booker] to his pre-Booker conduct violated the Ex Post Facto Clause" and noting that the Third Circuit had already rejected that same argument in Pennavaria "in which we held that the retroactive application of Booker did not violate the Ex Post Facto Clause").

Smith's Ex Post Facto Clause argument will also be rejected here.  As the Third Circuit has held, the application of Booker to cases where the crime was committed prior to 2005, when Booker was decided, does not violate the Ex Post Facto Clause of the Constitution.  Indeed, the Supreme Court specifically instructed courts to apply the Booker regime to cases that were pending appeal at the time Booker was decided.  Therefore, Smith suffered no prejudice when his counsel did not object on Ex Post Facto grounds to this Court's application of the Booker sentencing regime.

Incidental to this Ex Post Facto argument, Smith also makes some mention of the rules concerning how much time he must serve before he can be released from prison on the basis of good conduct.  Smith argues that, had he been sentenced under the pre-Guidelines system, he would have been eligible for release after the completion of one-third of his sentence, rather than the current system where he is required to serve at least 85 percent of his sentence.  Smith

contends that his counsel was ineffective for not challenging the alleged Ex Post Facto violation

caused by imposition of the current good credit system in light of <u>Booker</u>.  The Government

responds by noting that the statute that controls the provision of good conduct time, 18 U.S.C. §

3624(b), is an independent statute that is not part of the Sentencing Guidelines and was therefore

not addressed by <u>Booker</u>.

As discussed above, the Third Circuit has already held that application of the <u>Booker</u>

sentencing regime for pre-<u>Booker</u> conduct is not a violation of the Ex Post Facto Clause.  And, as

the Government rightfully notes, the statute governing good conduct time is not part of the

Sentencing Guidelines.  Instead, good conduct time is controlled by an independent statute, 18

U.S.C. § 3624(b).[6]  Smith has not provided this Court with any case that adopts his argument that

<u>Booker</u> had any impact on this non-Sentencing Guidelines rule, and this Court can find none.

Smith therefore suffered no prejudice when his counsel did not object to the imposition of the

current good conduct rules under § 3624(b).

### 2.    Consecutive Sentencing

Smith's final argument is that his counsel was ineffective for not challenging this Court's

---

[6] 18 U.S.C. § 3624(a) reads, in relevant part:  "A prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment, less any time credited toward the service of the prisoner's sentence as provided in subsection (b).  If the date for a prisoner's release falls on a Saturday, a Sunday, or a legal holiday at the place of confinement, the prisoner may be released by the Bureau on the last preceding weekday."  The principle that guides early release is described in 18 U.S.C. § 3624(b)(1), where it states that:  "Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations."

decision to sentence Smith consecutively for the counts on which the jury convicted him.  In

particular, Smith contends that this Court did not have the legal authority to impose consecutive

sentences for the § 922(g) conviction (felon in possession of a firearm) and the § 2119 conviction

(carjacking) since possession of a firearm satisfies an element of § 2119.  Smith argues, without

any reference to a legal principle or caselaw, that this Court can not impose consecutive

sentences on two counts where one count, the felon in possession count, is related to an element

of the other, the armed carjacking count.

The Third Circuit has recognized that "[t]rial courts traditionally exercised discretion to

impose consecutive or concurrent sentences as required by the facts of the case."  United States

v. Velasquez, 304 F.3d 237, 241 (3d Cir. 2002).  As the court identified in Velasquez, district

courts' ability to impose consecutive or concurrent sentences is governed by 18 U.S.C. § 3584,

which states that, "[i]f multiple terms of imprisonment are imposed on a defendant at the same

time, . . . the terms may run concurrently or consecutively, except that the terms may not run

consecutively for an attempt and for another offense that was the sole objective of the attempt."

§ 3584(a).  In deciding whether to impose concurrent or consecutive sentences, the district court

is required to consider "the factors set forth in section 3553(a)."  § 3584(b); see also United

States v. Gonzalez, 238 Fed. Appx. 829, 832 (3d Cir. 2007) (rejecting the defendant's argument

that the district court exceeded its authority to impose consecutive sentences for the counts to

which defendant pleaded guilty after recognizing the district court's authority under § 3584 and

finding that the district court gave meaningful consideration to the § 3553(a) factors).  To the

extent that Smith now challenges this Court's application of the § 3553(a) factors, the Third

Circuit has already rejected that argument on direct appeal.  See Smith, 247 Fed. Appx. at 325

(affirming the reasonableness of Smith's sentence and recognizing that this Court both "expressly considered the factors in Section 3553(a) as set forth in Booker" and considered Smith's circumstances relevant to the factors).

In his Reply Brief, Smith raises the argument that the consecutive sentencing was imposed in violation of the Double Jeopardy clause of the Fifth Amendment. Smith cites the case of United States v. Smith, 831 F. Supp. 549 (E.D. Va. 1993), where the district court held that the defendants could not be consecutively sentenced for violations of both the carjacking statute, 18 U.S.C. § 2119, and the statute that prohibits the use of a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c). The court reasoned that "[n]o element of the firearm statute is not also an element of the 'carjacking' statute" and that Congress had not clearly intended for judges to sentence defendants separately to both a crime (carjacking) and to an element of that crime (use of a firearm). Id. at 550-51.

Since Smith, an overwhelming number of federal appellate courts, including the Third Circuit, have rejected this argument that consecutive sentencing, where the defendant is convicted of both armed carjacking and use of a firearm, violates the Double Jeopardy Clause of the Fifth Amendment. In United States v. Bishop, 66 F.3d 569, 573-75 (3d Cir. 1995), the Third Circuit ruled that the language of 18 U.S.C. § 924(c) reflected a clear legislative intent to permit a district court to impose consecutive sentencing without triggering the Double Jeopardy Clause (quoting Missouri v. Hunter, 459 U.S. 359, 366 (1983) ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."). As the Third Circuit

and other Courts of Appeals[7] have long held that imposing a consecutive sentence for these two

crimes is not a Double Jeopardy violation, this Court rejects Smith's contention.

Therefore, Smith suffered no prejudice when his counsel did not object to this Court's

imposition of consecutive sentences.

**IV.      Certificate of Appealability**

Finally, this Court finds no probable cause to issue a certificate of appealability.

An appropriate Order follows.

O:\Criminal Cases\04-229 Smith, Ron; US v\CR 04-229 Smith, US v. - Memo Re Habeas Petition.wpd

---

[7] See also United States v. Centeno-Torres, 50 F.3d 84 (1st Cir. 1995); United States v. Johnson, 32 F.3d 82 (4th Cir. 1994);  United States v. Singleton, 16 F.3d 1419 (5th Cir. 1994); United States v. Johnson, 22 F.3d 106 (6th Cir. 1994); United States v. Seawood, 172 F.3d 986 (7th Cir. 1999); United States v. Jones, 34 F.3d 596 (8th Cir. 1994); United States v. Martinez, 49 F.3d 1398 (9th Cir. 1995); United States v. Overstreet, 40 F.3d 1090 (10th Cir. 1994); United States v. Martin, 38 F.3d 534 (11th Cir. 1994).